# EXHIBIT E

# State Court Complaint

STATE OF NORTH CAROLINA  FILED IN THE GENERAL COURT OF JUSTICE
　　　　　　　　　　　　　　　　　　　　　SUPERIOR COURT DIVISION
FORSYTH COUNTY    2011 MAR 18 PM 3: 14    11 CvS 1528

WAKE FORREST UNIVERSITY and  FORSYTH COUNTY, C.S.C.
WAKE FOREST UNIVERSITY    BY
HEALTH SCIENCES,                )
　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,         )
　　　　　　　　　　　　　　　　)      **COMPLAINT**
v.                              )
　　　　　　　　　　　　　　　　)      **JURY TRIAL DEMANDED**
KINETIC CONCEPTS, INC. and      )
KCI USA, INC.,                  )
　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.        )
　　　　　　　　　　　　　　　　)

COME NOW Plaintiffs Wake Forest University and Wake Forest University Health Sciences (collectively "Wake Forest"), complaining of the Defendants and alleging as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Wake Forest University is a non-profit corporation and an institution of higher education organized and existing under the laws of the State of North Carolina with its principal place of business in Forsyth County, North Carolina.

2. Plaintiff Wake Forest University Health Sciences is a non-profit corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Forsyth County, North Carolina. Wake Forest University Health Sciences is a wholly controlled subsidiary of Wake Forest University.

3. Upon information and belief, Defendant Kinetic Concepts, Inc. is a corporation organized and existing under the laws of the State of Texas with its principal place of business in San Antonio, Texas.

4. Upon information and belief, Defendant KCI USA, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in San Antonio, Texas. KCI USA, Inc. is authorized and registered to do business in the State of North Carolina.

5. The Court has personal jurisdiction over the Defendants Kinetic Concepts, Inc. and KCI USA, Inc. (collectively "KCI"), which both have systematic contacts with residents of North Carolina and have repeatedly availed themselves of the benefits of conducting business and pursuing litigation in this forum. For example, as detailed in further allegations below, KCI entered into a license agreement with Wake Forest, which agreement is governed by the law of North Carolina, and, pursuant to that agreement, has done business within North Carolina and has sent millions of dollars in royalty payments to Wake Forest in North Carolina. Furthermore, KCI has filed multiple lawsuits in North Carolina concerning the patent rights that are the subject of the agreement that forms the basis for this dispute.

6. The Court has subject matter jurisdiction over the matters asserted in this Complaint, as the amount in controversy is in excess of $10,000.

7. Venue is proper in Forsyth County. Plaintiffs have their registered and principal offices in Forsyth County, Defendants are regularly engaged in carrying on business in Forsyth County, and the cause of action arose in whole or in part in Forsyth County.

## BACKGROUND

<u>The License Agreement Between the Parties and Its Terms</u>

8. Researchers working on behalf of Wake Forest invented certain novel technologies and methods relating to providing effective wound treatment for difficult-to-treat and chronic wounds. In recognition of the technological advances made by these researchers, the

U.S. Patent and Trademark Office issued certain patents, all of which are assigned to and owned by Wake Forest along with certain foreign patents (the "Patents").

9.   Effective October 6, 1993, as amended on December 22, 2000, Wake Forest and KCI entered into an agreement that granted KCI, among other things, a worldwide right and license to make, have made, use, lease, sell and sublicense certain products, and to practice and sublicense certain processes, under the Patents ("the License Agreement"). The License Agreement is incorporated herein by reference.

10.   Pursuant to the License Agreement, KCI has incorporated the technology of the Patents into certain products and processes (the "Licensed Products"). The Licensed Products have been used to treat millions of patients all over the world, and upon information and belief, have generated several billion dollars in revenues for KCI during the course of the License Agreement.

### Reports, Royalty Payments and Audit Rights

11.   Under the License Agreement, KCI agreed to pay Wake Forest license fees in the form of royalties based upon certain Net Sales of the Licensed Products, as defined in the License Agreement. Net Sales is defined in the Licensing Agreement generally to mean gross revenues from sales or leases of Licensed Products less any discounts (quantity, trade and cash), returns, freight and other transportation, other delivery costs, use and withholding tax, sales tax and value added tax.

12.   The License Agreement required KCI to report all royalties owed to Wake Forest on or before the last days of February and August of each year of the License Agreement, based on sales or leases of the Licensed Products occurring in the immediately previous January to June and July to December periods, respectively ("the Semi-Annual Reports"). Required

3

contents of the Semi-Annual Reports include an accounting for all Licensed Products leased or sold by KCI, total deductions applied to Net Sales as allowed by the License Agreement, and total royalties due to Wake Forest.

13. Contemporaneously with the delivery of the Semi-Annual Reports, the License Agreement also required KCI to remit payment of all royalties. All royalty payments are to be timely remitted to Wake Forest in Winston-Salem, North Carolina.

14. In the event of termination of the license, KCI is required – within 30 days of termination – to submit a report similar to the Semi-Annual Report and any royalty payments due.

15. The License Agreement grants Wake Forest the right to request a firm of certified public accountants to inspect the books and records of KCI with respect to the correctness of the Semi-Annual Reports and payments due Wake Forest under the terms of the Licensing Agreement.

### KCI's and Wake Forest's Joint Prosecution of Patent Infringement Actions and Joint Defense of the Validity of the Patents

16. In the License Agreement, KCI assumed the duty to enforce and defend at its expense the Patents against infringers and to defend the patents in any declaratory judgment action alleging the invalidity or non-infringement of the Patents.

17. The License Agreement provides that KCI will generally be responsible for the costs and expenses of any infringement or declaratory judgment actions, as well as any damages assessed.

18. Throughout the period of the License Agreement, KCI has prosecuted numerous lawsuits against third parties for infringement of the Patents, and has repeatedly asserted that the Patents are valid, infringed and cover the KCI products as well as the products of third parties.

These lawsuits include two such suits currently pending in the United States District Court for the Middle District of North Carolina, wherein KCI has asserted that third parties are infringing the Patents and that the Patents are valid: *Wake Forest University Health Sciences et al. vs. Innovative Therapies, Inc.*, Civil Action No. 1:08-cv-32 (M.D.N.C.); and *Kinetic Concepts, Inc. et al. v. Convatec, Inc. et al.*, Civil Action No. 1:08-cv-918 (M.D.N.C.).

19. Two federal juries have found one or more of the Patents to be valid. In the first case, the jury found U.S. Patent Nos. 5,645,081 ("'081 patent") and 5,646,643 ("'643 patent") to be valid but not infringed, and the Federal Circuit affirmed the judgment in *Kinetic Concepts, Inc. et al. v. Blue Sky Medical Group et al.*, 554 F.3d 1010 (Fed. Cir. 2009) ("*Blue Sky I*").

20. In the second case (*Kinetic Concepts, Inc. et al. v. Bluesky Medical Group, Inc. and Smith & Nephew, Inc.*, Civil Action No. SA-08-CV-102-WRF (W.D. Tex.) ("*Blue Sky II*")), a jury held that the '081 patent and U.S. Patent No. 7,216,651 ("'651 patent") were valid and infringed. After the *Blue Sky II* jury verdict, KCI repeatedly asserted that the jury had correctly found those claims to be valid and infringed. Indeed, Catherine Burzik, KCI's President and Chief Executive Officer publicly announced, "The outcome of this trial exemplifies the protections provided to innovators like Wake Forest and KCI under the U.S. Patent system."

21. Notwithstanding both the prior decision in *Blue Sky I* and the jury verdict in *Blue Sky II*, on October 18, 2010, the *Blue Sky II* district judge granted the defendants' motion for judgment as a matter of law that certain asserted claims of the '081 patent and the '651 patent were invalid and accordingly entered judgment against KCI and Wake Forest in that case.

22. On November 17, 2010, KCI filed a Notice of Appeal to the Federal Circuit in *Blue Sky II* on behalf of both itself and Wake Forest. Following a routine extension, KCI and Wake Forest's brief in the Federal Circuit was due on March 9, 2011.

23. KCI has publicly stated that the district court's order in *Blue Sky II* was "questionable" and that the Federal Circuit is "very likely" to reverse the decision. Further, Ms. Burzik publicly announced, "We strongly disagree with the Court's decision."

### KCI Ceases Defending the Validity of Patents and Instead Attacks Them

24. On February 28, 2011, with the briefing deadline in the *Blue Sky II* appeal less than two weeks away, KCI abruptly reversed course. KCI filed a lawsuit, *Kinetic Concepts, Inc. and KCI USA, Inc. v. Wake Forest University Health Sciences*, Civil Action No. 5:11-cv-163, in the United States District Court for the Western District of Texas, seeking a declaratory judgment concerning the contractual rights and obligations under the terms of License Agreement, and a declaratory judgment that the Patents are invalid and that KCI does not infringe any valid and enforceable claim of the Patents. Pursuant to Section 18.1 of the License Agreement, KCI's claims for declaratory judgments of its rights and obligations under the License Agreement are governed by the laws of the State of North Carolina.

25. On the same date that it commenced the KCI lawsuit, KCI announced that it would not enforce the Patents against alleged infringers and that it would seek to withdraw from its prosecution of various cases asserting infringement of the Patents and defending their validity, such as *Blue Sky II* and the two cases currently pending in the United States District Court for the Middle District of North Carolina. KCI also announced that it would not participate in the Federal Circuit appeal of *Blue Sky II*.

26. Contrary to the License Agreement, Wake Forest has been forced to bear, and will continue to be forced to bear, the costs and expenses of all litigation related to the Patents, as well as potential judgments against it.

### KCI Fails to Make Full Royalty Payments as Required by the License Agreement

27. Starting no later than February 28, 2008, KCI began to breach the License Agreement by failing to render accurate Semi-Annual Reports to Wake Forest and to remit the full and timely royalty payments required by the License Agreement.

28. Upon learning that Net Sales and deductions and credits were being calculated contrary to the License Agreement and that KCI thereby was improperly reducing the total royalty payments to Wake Forest, Wake Forest gave notice to KCI on March 16, 2010 that it was performing an inspection of the books and records of KCI related to the License Agreement.

29. The inspection revealed, among other things, that KCI had systematically undertaken to calculate the Net Sales number in a manner inconsistent with the terms of the Licensing Agreement. Among other things, KCI had systematically undertaken to re-characterize various expenses as "freight and other transportation" or "other delivery costs," thereby increasing the deductions from gross revenues and ultimately decreasing the royalty payments to Wake Forest.

30. KCI has also improperly taken deductions for payments made to David Zamierowski during a reporting period in which no payment was actually made to Zamierowski.

31. As a result of KCI's improper reporting and remission of royalty payments, Wake Forest has not been timely paid the full royalty amounts owed as required by the License Agreement, damaging Wake Forest in excess of ten million dollars.

### KCI Ceases Paying Royalties

32. The February 28, 2011 date of the KCI lawsuit attacking the Patents was not accidental. On that date, KCI was required to submit its Semi-Annual Report and make its

royalty payment to Wake Forest for all Licensed Products leased or sold during the six-month period ending December 31, 2010.

33. Upon information and belief, KCI sold or leased hundreds of millions of dollars of Licensed Products during the six-month period ending December 31, 2010. Upon information and belief, Wake Forest's earned royalty for that six-month period should have been in excess of forty million dollars.

34. As of February 28, 2011, Wake Forest had fully performed its obligations under the License Agreement, and all conditions had been fulfilled for KCI to be required to submit its Semi-Annual Report and to make its royalty payment to Wake Forest. Indeed, KCI has never provided Wake Forest with a Notice of Breach under the License Agreement.

35. Yet KCI failed and refused to submit any Semi-Annual Report or to make any royalty payment to Wake Forest on February 28, 2011. Moreover, as of the date of the Complaint, KCI still has not submitted any Semi-Annual Report or made any royalty payment to Wake Forest for the six-month period ending December 31, 2010.

<u>Wake Forest's Termination of the License Agreement</u>

36. On March 18, 2011, Wake Forest provided notice to KCI, pursuant to the terms of the License Agreement, that the License Agreement was terminated immediately. Under the License Agreement, Wake Forest was entitled to terminate the License Agreement, effective immediately, based either upon KCI's failure to make a required "floor royalty" payment under Section 4.3.2 of the License Agreement or upon KCI's dispute of the validity of any Patent.

37. There were grounds for immediate termination of the License Agreement both because KCI failed to make the semi-annual floor royalty payment and because KCI disputed the

validity of the Patents by filing the Complaint in *Kinetic Concepts, Inc. and KCI USA, Inc. v. Wake Forest University Health Sciences*, Civil Action No. 5:11-cv-163 (W.D. Tex.).

38.  The License Agreement imposes a number of requirements on KCI upon early termination of the License Agreement, including, among other things, that KCI will cease making use of Confidential and Proprietary Information and will promptly return all written material incorporating, based on, derived from, or growing out of Confidential and Proprietary Information, and that KCI will provide Wake Forest all of KCI's studies, assessments, marketing information, manufacturing drawings and molds relating to the Licensed Products. Accordingly, contemporaneously with the termination of the License Agreement, Wake Forest demanded, among other things, that KCI comply with its obligation to cease making use of Confidential and Proprietary Information, to promptly return all written material incorporating, based on, derived from, or growing out of Confidential and Proprietary Information, and to promptly provide Wake Forest all of KCI's studies, assessments, marketing information, manufacturing drawings and molds relating to the Licensed Products.

39.  In addition, within thirty days following termination of the License Agreement, KCI is required to submit a report similar to the Semi-Annual Report and any royalty payments due. Wake Forest has demanded that KCI comply with these obligations, but KCI has publicly announced that it does not intend to accrue or make royalty payments for the period after February 27, 2011.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

40.  Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 39.

41. The License Agreement entered into by Wake Forest and KCI is a valid and enforceable contract.

42. Wake Forest has fully performed all of its obligations under the License Agreement.

43. All conditions precedent to KCI's performance and to the assertion of Wake Forest's rights have been satisfied.

44. KCI has breached and continues to breach the License Agreement in numerous ways, including but not limited to:

> a. Failing to timely submit correct Semi-Annual Reports as required by the License Agreement;
>
> b. Failing to timely submit full royalty payments, including but not limited to failures due to improper calculations of Net Sales and improper deductions under the License Agreement;
>
> c. Failing and refusing to submit a Semi-Annual Report and royalty payments for the period ending December 31, 2010, and for the period thereafter; and
>
> d. Failing to bear the costs and expenses of the prosecution and defense of litigation related to the validity and infringement of the Patents.

45. As a direct and proximate result of Defendants' breach, Plaintiffs have been damaged in an amount to be proven at trial in excess of $10,000. Plaintiffs are continuing to suffer injury and resulting damages each day that the breach and repudiation continues.

46. Furthermore, there is an actual and existing controversy between the parties as to whether KCI is in default under any obligations to Plaintiffs and as to Wake Forest's rights under

the License Agreement and KCI's obligations under the same. Plaintiffs are entitled to a declaration that KCI is required to perform its obligations under the terms of the License Agreement.

## SECOND CAUSE OF ACTION
### (Breach of Contract and Audit and Accounting)

47. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 46.

48. The License Agreement provides for the right to an inspection of the books and records of KCI related to the License Agreement.

49. KCI has exclusive custody and control of the books and records related to the proper reporting and calculation of royalty payments under the License Agreement.

50. In the License Agreement, KCI assumed responsibility for the proper reporting and calculation of royalty payments under the License Agreement.

51. By assuming responsibility under the License Agreement, KCI assumed the duty to act in good faith in reporting and calculating royalty payments under the License Agreement.

52. Consistent with these duties and by virtue of the fact that KCI has exclusive custody and control of the relevant books and records, Wake Forest requests an order requiring KCI to account to Wake Forest for the proper reporting and calculation of royalty payments under the License Agreement.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

53. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 52.

54. The License Agreement entered into by Wake Forest and KCI is a valid and enforceable contract.

55. The License Agreement contains covenants of good faith and fair dealing implied by law.

56. Wake Forest has fully performed all of its obligations under the License Agreement.

57. Defendants have breached, and continue to breach, the covenants of good faith and fair dealing contained in the License Agreement.

58. As a direct and proximate result of Defendants' breach, Plaintiffs have been damaged in an amount to be proven at trial in excess of $10,000. Plaintiffs are continuing to suffer injury and resulting damages each day that the breach and repudiation continues.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment/Restitution)

59. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 58.

60. Plaintiffs entered into a relationship with Defendants in which Plaintiffs conferred benefits upon Defendants by, among other things, permitting Defendants to sell and lease products under the Patents.

61. Defendants knowingly and voluntarily accepted those benefits.

62. Those benefits were not given gratuitously but instead were conferred upon Defendants with a reasonable expectation of payment.

63. Defendants have retained the benefits that Plaintiffs have conferred upon Defendants but have not paid Plaintiffs reasonable and fair market value for those benefits.

64. Because Defendants have not paid Plaintiffs reasonable and fair market value for the benefits that Plaintiffs have conferred upon Defendants, Defendants have been, and continue to be, unjustly enriched at the expense of Plaintiffs.

65. Plaintiffs are entitled to judgment in an amount to be proven at trial in excess of $10,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Wake Forest University and Wake Forest University Health Sciences pray the Court:

1. Enter judgment in favor of Plaintiffs on their claims against Defendants set forth herein;

2. Award Plaintiffs damages against and restitution from Defendants in an amount to be determined at trial, in excess of $10,000;

3. Award Plaintiffs pre-judgment and post-judgment interest at the maximum legal rate;

4. Award Plaintiffs declaratory relief regarding Wake Forest's rights under the License Agreement and KCI's obligations under the same;

5. Provide for an immediate accounting and audit of the books and records of KCI related to the License Agreement;

6. Award Plaintiffs temporary, preliminary and injunctive relief requiring Defendants to comply with the License Agreement;

7. Award Plaintiffs their costs, expenses, accountants', experts' and attorneys' fees as allowable by law;

8. Tax the costs and expenses of this action to Defendants;

9. Grant Plaintiffs such other relief as the Court deems just and proper; and

10. Grant a trial by jury of all issues so triable.

This the 18th day of March, 2011.

                                           */s/ James T. Williams, Jr.*
                                           James T. Williams, Jr.
                                               North Carolina State Bar. No. 4758
                                         Clinton R. Pinyan
                                               North Carolina State Bar No. 22260
                                         *Attorneys for Plaintiffs*

**OF COUNSEL:**
BROOKS PIERCE McLENDON
  HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone: 336-373-8850
Facsimile: 336-378-1001

14